**UNITED STATES DISTRICT COURT**
**Northern District Of Texas**
**Dallas Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **CASE NO: 3:25CR457** |
| | § | |
| **FANGZHOU (AMBER) CHEN** | § | |

## (SEALED) DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER AND FOR RELEASE ON CONDITIONS

Defendant Amber CHEN, by and through her undersigned counsel Steven Hayden, respectfully moves this Honorable Court to accept this Motion as a SEALED document because it may discuss sealed victim information, sensitive process issues or court peronnel; and thus moves the Court pursuant to 18 U.S.C. §§3142(f), 3142(i), and 3145(b) and other statutory and relevant case law, for reconsideration of the Court's prior order revoking bond and ordering pretrial detention. As set forth below, potential misunderstandings of relevant facts, material changed circumstances, combined with the statutory factors governing pretrial release, now weigh in favor of Defendant's urging the Court to reconsider her release under appropriate conditions.

### I. Case History

Defendant was arraigned on September 10th, 2025 and released on bond conditions. Probation explained the bond conditions to Ms. Chen with an emphasis on;

a) no direct or indirect contact with the alleged victims in the case,

b) continued communication with the probation department,

c) regulation of Defendant's access to the internet, and

d) psychological evaluation and mental health counseling sessions,

but the issue of "sealed documents" was not included in that discussion.  Ms. Chen was not informed about her rights and responsibilities regarding sealed court documents, and she wasn't aware of the contents of any sealed court documents involving the alleged victims.  In fact, the first time Defendant was ever shown the Court's sealed Supplement to Order Setting Conditions of Release containing the alleged victim's names was January 8th, 2026 at 5:10 CST when her new retained attorney Steven Hayden showed the document to her at an attorney visit at the Johnson County jail.  Officer Tolbert merely stated the names, asked Ms. Chen to write them down (proposed Ex. #1), and it was explained that she was to avoid contact any of those individuals directly or indirectly.

Defendant mistakenly thought she retained certain free speech rights, and used the blog section of her business website to memorialize her experiences in the criminal process.  In the article "Updates on Amber" (proposed Ex. #2) Defendant detailed her arrest and incarceration journey and named six individuals who were identified to her and she reiterated in no uncertain terms that she was told to avoid contact with them.  This article was not posted on social media nor pushed to the public – it simply sat on her website's blog section.  It is important to note that Ms. Chen did not reach out to those individuals nor imply that anyone else should (and in fact, has taken steps such as blocking these individuals on her professional social media such as LinkedIn and Instagram years ago to proactively avoid contact with them).  However despite the passive nature of this memorialization, at least one of the alleged victims, sought out Defendant's website and was upset that their identity was revealed and claimed to have felt threatened by that revelation.  Ms. Chen was never told which alleged victim trafficked her website, but believes that alleged victim is also the person who, in response to Defendant calling her out for plagiarism, filed a grievance against the Ms. Chen with the Texas Bar that was summarily dismissed in 2023 (proposed Ex. #3), and whose appeal of that dismissal was also poured out (proposed Ex. #4) by an appellate panel appointed by

the Supreme Court of Texas.  That alleged victim also called the Hurst Police Department and made an unsubstantiated allegation against the Defendant that Hurst PD investigated and found to be an uncredible report and for which no law enforcement action was ever taken (proposed Ex. #5).

The federal probation office and the Government characterized the above blog article a violation of Defendant's bond conditions, and on October 2nd, 2025, Ms. Chen was admonished by probation officer Eric Tolbert and a probation supervisor.

Defendant's court-appointed attorney was not present for this meeting and she did not receive any legal advice on her restrictions, rights and responsibilities.  In fact, Ms. Chen's communicative relationship with her initial counsel was largely nonexistent and truly ineffective. Defendant claims that phone calls to discuss case status and emails containing key evidence about the case were ignored.  As a matter of course, Defendants benefit greatly from direct and effective legal advice during the first weeks on federal bond conditions – Ms. Chen was denied this benefit. Even though Defendant is a licensed attorney, her legal work is primarily in the area of evidence compilation and evaluation in a corporate law setting, and she is not familiar with the terms and policies of federal criminal law.

So during the admonishment session, Defendant acknowledged her transgressions and she removed the entire blog section from her website within one business day (it would have been immediate, but she had to make a request to her IT provider).  Officer Tolbert and his supervisor placed Ms. Chen under the impression that her mitigation had been accepted by the probation office.  Nevertheless, on October 3rd, 2025 the Government filed a Motion to Revoke her pretrial release.  Rightly or wrongly, Defendant interpreted this move against her bond as a violation of trust, after the probation office first appeared to accept the mitigation which immediately followed the admonition.  The trust issues between Ms. Chen and the probation department; the silence between Ms. Chen and her attorney; and the soured relationship as the Government seemed to

change its attitude towards her with no notice; all widened.  Defendant lapsed into a self-defense mode feeling that she had no advocate and no hope for justice.

Even though these relationships soured, Defendant still continued to follow the dictates of her bond conditions through October and early November of 2025.  Conditions such as non-contact, avoidance of all social media, submission to restrictive travel, diligent job-seeking, use of a laptop with monitoring software for Court-approved purposes only, contact with probation, and bi-monthly attendance to mental health counseling were all met at that time.  Ms. Chen only had to reschedule one mental health session and attended the next day to the satisfaction of her provider. She still hoped that her mitigation would eventually be acknowledged and prayed her attorney would work the situation to a reasonable conclusion.  However, as the date for the revocation hearing approached, Defendant's Counsel was still ignoring her communication; and Officer Tolbert and the probation office, whom she had trusted when it was said that her mitigation was satisfactory, had completely changed their countenance towards her.

The communication between Ms. Chen and Officer Tolbert became less and less congenial in early November 2025, and Defendant eventually urged the probation officer to communicate to her through her attorney.  Officer Tolbert reminded her of her responsibilities under bond conditions, and began to text Ms. Chen in what the Defendant interpreted as an overbearing and threatening way.  Ms. Chen blocked direct contact from Officer Tolbert and in an overreaction to this feeling of isolation.  She then posted in social media about those individuals in the government at the hands of whom she felt she was being persecuted without advocacy, including posting the business card of her probation officer.

Defendant's court-appointed attorney finally called her for the *first time* since her arraignment two months prior, to berate her for that conduct.  Defendant *immediately* unblocked the probation number and called Officer Tolbert – Ms. Chen left an apologetic message on the probation officer's

voicemail one day before her bond revocation hearing. The entire situation regarding the violation of bond conditions culminated in a bond revocation hearing on November 6th, 2025.

The transcript from this hearing indicates a lack of preparation and misunderstanding of the facts by Ms. Chen's court-appointed attorney. While previous counsel engages the process and objects to evidence and briefly argues for his client, the transcript indicates only a cursory knowledge of Defendant's circumstances, and several imprecise statements were allowed to be advanced to the Court (which will be addressed in the "New Information" section of this Motion).

The Court ruled to revoke Defendant's pretrial bond status and Ms. Chen has been in custody at the Johnson County jail since that day. Defendant's treatment while at the county jail has been riddled with discrimination; it has been persecutorial, traumatic and can be argued to have violated her civil and personal rights. Ms. Chen does not blame the Court or the U.S. Attorney's Office for her mistreatment while incarcerated, but would point to that treatment as adequate punishment for her incendiary conduct while on her initial bond.

## II. Legal Standard

### Bail Reform Act

The Bail Reform Act mandates that a defendant shall be released on personal recognizance or unsecured bond unless the Court determines that such release will not reasonably assure appearance or will endanger the safety of any other person or the community. 18 U.S.C. §3142(b). Where such concerns exist, the Court must consider whether conditions of release will reasonably mitigate those risks. 18 U.S.C. §3142(c).

### Reconsideration of Detention

A detention order may be reopened where new information exists that "was not known to the movant at the time of the hearing and that has a material bearing" on the appropriateness of

detention. 18 U.S.C. §3142(f)  Courts have consistently held that changed circumstances, including extended pretrial incarceration, demonstrated compliance, or new conditions of supervision, justify reconsideration. See *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003)

### III. Application to Relevant Facts

The Government moved for revocation of Defendant's bond for writing an article on her website blog section posting a blog on her website displaying the victims' names, employers and home cities; further, Ms. Chen's social media posting in early-November was cited as noncompliance deserving of revocation.

### New Information

The transcript indicates that previous counsel allowed (and even advanced) imprecise assertions allowing for potential misunderstanding of circumstances by the Court, and the Precise Facts which were elusive at the hearing apply to the *Cisneros* factors above;

> Assertion which allows potential misunderstanding / Page 7 Line 3 refers to a "sealed court filing" containing the names of the alleged victims in this case, but it was never alleged that the Defendant was shown this document,  whether she was aware of it's contents, or was apprised of her rights or responsibilities regarding sealed documents.

> Factual Assertion by Defendant / Defendant was merely told that she "cannot contact" the alleged victims and was read a list of people to avoid and she jotted them down in the order they were read to her.  Defense Counsel allowed the Court to conclude that Defendant was informed that her First Amendment rights to write articles regarding her criminal process was also curtailed, when she had not been told that was the case.

> Assertion which allows potential misunderstanding / Page 22 and page 40 Lines 24-25 allege that "[t]he sealed documents was posted on her website and posted on her X account" without declaring which documents were posted, allowing the Court to potentially conclude that the sealed documents containing the alleged victim's names was the document posted,

when it was the title page of a Search Warrant for her Linked-In Account and the title page to her Criminal Complaint, and an article the Defendant had written to memorialize her narrative as a criminal defendant, which did contain the names of people she was ordered to avoid that she had jotted down while admonished by the probation department.

Factual Assertion by Defendant / Ms. Chen has never been in possession of the sealed court document containing the alleged victim's names that she is alleged to have posted on her website and she was never shown that document when apprised of her bond conditions; the first time she had ever seen the sealed order containing the alleged victim's names was on January 8th, 2026 during a visit by her new attorney; Ms. Chen did indeed post a search warrant and her criminal complaint, and has apologized to the Court for assuming that these documents were no longer "classified" after they were exercised by the government or processed by the Court; as consequence for this dissemination, she has spent over 60 days incarceration and asks that the Court and the Government accept her apology.

Assertion which allows potential misunderstanding / Page 8 Lines 24-25: alleges that "she did abide by that condition" to take the information down from her website, but that it "took some time" allowing the Court to infer that the information lingered on Defendant's website in defiance of her admonition.

Factual Assertion by Defendant / Defendant worked immediately not *only* to remove the names of the alleged victims she was given, but to remove the *entire blog section* of her website, but that could only be done the following day by making direct contact with her IT provider; Defense Counsel did not make the Court aware of the diligence with which the Defendant acted to mitigate her transgression.

Assertion which allows potential misunderstanding / Page 16 Line 12-14: Defense Counsel allows the probation officer to state that Defendant "had other appointments and failed to report" that Ms. Chen "rescheduled" but "hasn't reported physically"; in fact, Defense Counsel allowed the misstatement on Page 20 on Lines 14-21 where the government asserted that Ms. Chen had rescheduled two mental health sessions in the short time she had been on bond conditions.

<u>Factual Assertion by Defendant</u> /  The Defendant did indeed miss the mental health session which was supposed to have occurred the day before the bond revocation hearing, because she had no faith that her attorney would adequately argue for retention of her bond status, and further, she expected to see her counselor at the hearing; yet before that missed session, photos and attendance records from the provider prove that Defendant actually attended all four bi-monthly mental health appointments (one rescheduled to the following day) and had received a full Psychological Evaluation with Dr. Elizabeth Payne with Phoenix Associates (where she was given a clean bill of psychological health).

<u>Assertion which allows potential misunderstanding</u> / Page 12 Lines 21-25 the Government and probation appear to be talking about different issues, when the Government sates "I believe yesterday was when you had the last contact with the Defendant" and probation's response was "Technically, no" without being prompted for an explanation of what 'technically' meant, resulting in the statement that the last time probation had contact with "victim [Defendant, sic] was on Tuesday" meaning November 4th, 2025; this could have left the Court with the misunderstanding that Defendant blocked communication and stopped communication with probation from November 4th up to the hearing date.

<u>Factual Assertion by Defendant</u> / Ms. Chen did indeed block communication with probation for a short time after telling Officer Tolbert that she wanted to communicate with probation through her attorney; however, Defendant immediately unblocked the probation department upon a stern call from her counsel, and immediately called the probation department on Wednesday the 5th of November (not Tuesday) and left a tearful and apologetic message on Officer Tolbert's voicemail because he was unavailable to talk; in fact, counsel for the Government was right about the fact that the last communication was on the day before the hearing.

<u>Assertion which allows potential misunderstanding</u> / Page 18 Line 17 is where former Defense counsel averts during cross-examination that "she's [Defendant is] not able to practice at this time" revealing a lack of understanding of Defendant's status as a licensed attorney; and probation agrees with Defense counsel's inaccurate statement on Line 18; which may have led the Court to conclude that Ms. Chen was unable to fulfill her bond condition of maintaining employment.

<u>Factual Assertion by Defendant</u> / Defendant Amber Chen is a licensed attorney in the States of Texas and Minnesota, she is able to practice law even *now* as an incarcerated individual, she was offered employment in October in her field of evidence examination/evaluation, and had she been able to avoid incarceration, she would have engaged in said employment as a licensed attorney within days of her Motion to Revoke Hearing; further she still remains a viable candidate for legal services employment upon her release, and can satisfy her bond condition of maintaining employment.

<u>Changed Circumstances and Demonstrated Compliance</u>

<u>Previous Circumstance</u> / Defendant's relationship with her previous attorney was never robust or even collegial.  Ms. Chen attempted to contact her lawyer to no avail; she did not talk to her attorney except at court settings, until counsel called her the day before her bond revocation hearing to berate her for blocking the probation officer.  Defendant's previous counsel was in possession of several items of exculpatory evidence including State Bar grievances against which Ms. Chen had prevailed, and state-level allegations (by alleged victims in this case) that had been ridiculed and closed as uncredible by local law enforcement, but did not meet with Defendant during the first two months of her representation and did not have mastery of this information to inform the Court during the bond revocation hearing.

<u>Changed Circumstance</u> / Defendant hired private counsel in early December 2025 and Mr. Hayden has visited Ms. Chen on multiple occasions for several hours at a time, to grasp the nuance of Ms. Chen's case and work with the Defendant to understand the chaos of October and early-November 2025.  Counsel Hayden has earned Defendant's trust through robust and empathetic communication.  Counsel Hayden has explained in detail the Court's and the Government's position on her behavior while on bond; the limits of free speech rights while on bond conditions in a sealed case; the role of "sealed documents"; and the nature of the charges and potential evidence against her.  If the Court allows Ms. Chen another opportunity on bond conditions, Counsel Hayden will be present at each step, ensuring compliance that comes from a full understanding of Defendant's rights and responsibilities.

<u>Previous Circumstance</u> / Defendant was denied effective assistance of counsel regarding her rights and responsibilities when dealing with sealed criminal court filings.  Ms. Chen is a licensed attorney but works mostly in evidence compilation and evaluation and doesn't understand the true legal significance of the term "sealed" in relationship to pleadings and court orders; Defendant was not advised by her attorney nor probation nor the Court as to her responsibilities regarding any sealed documents, but was instead merely told a list of individuals that she must refrain from contacting.  The shifting attitudes of the probation department and the Government towards her over the course of October 2025 exacerbated by the lack of communication from her attorney, reignited feelings of helplessness Ms. Chen felt growing up under Chinese totalitarianism; this miasma lead to Defendant's distrust of the system and prompted her lashing out with incendiary communication, which would normally be covered by her First Amendment right to free speech except that she was under bond conditions and sealed court orders.

<u>Changed Circumstance</u> / Counsel Hayden has explained, over the course of dozens of hours of attorney visitation, the Court's expectations regarding the dissemination of documents or information while the case is sealed.  If the Court allows Ms. Chen another opportunity on bond conditions, Counsel Hayden will ensure that Defendant understands her rights and responsibilities and restrictions during the pendency of the case.

<u>Previous Circumstance</u> / Defendant was arrested at the airport after visiting her parents in China and she underwent a whirlwind several days of incarceration, humiliation and unanticipated court process.  Ms. Chen was then told that she could not use her power of free speech to air her grievances and she was shut off from the world with internet restrictions and curtailed speech.  She was then subject to a lack of adequate counsel and was forced to navigate a fluid legal situation where she had no effective advocate.  If she thought things were difficult on bond conditions, she has now been locked in the Johnson County jail for over sixty days – that misery has had the intended effect.

<u>Changed Circumstance</u> / Ms. Chen has a changed and humbled attitude towards the authority of the probation department and the rules which the Court expects all people on bond in sealed cases to comport themselves.  The government asked for revocation of bond because, in some material ways, Ms. Chen failed to follow the rules.  For the reasons set

forth above, she acted out of an unnecessary sense of self-preservation.  But Defendant's time incarcerated, over the Thanksgiving, Christmas and New Years' holidays, with well over a month in a Segregated Cell which is known to 'break' people in five days, has been *more* than punitive, it has been educational.  With a contrite heart, she has admitted the failings of her behavior, and will not fail the Court again.  Ms. Chen's status as a licensed attorney made her a mark in general population; and as an educated Asian immigrant woman unfamiliar with incarceration, discrimination has led to issues with inmates and staff.  Defendant's safety has been threatened on a daily basis and she was placed in SEG "Blue East".  When she was transported to SEG, Defendant Chen was maced in the face and eyes until she was blinded, and beaten (proposed Ex. #6); Ms. Chen only gets to go outside every other day, has to strip naked and demonstrate that she isn't concealing anything in bodily orifices whenever she is called out for attorney visitation, and the over-reaction to Defendant's aversion to dairy has resulted in her receiving no protein in her meals, including a denial of the special inmate meal for Thanksgiving or Christmas.  Despite all of this, Ms. Chen has persevered while in custody and has participated in daily written and oral Bible Study in both the Old and New Testaments, even praying with others through the bars of their segregated cells while housed in Blue East.  Defendant has come to terms with the unreasonableness of her conduct while on bond conditions, regardless of the circumstances.  Ms. Chen's accepts responsibility for her reckless behavior and apologizes to the Court, court officers and the probation office in written statement. (proposed Ex. #7)  If the Court allows Ms. Chen another opportunity on bond conditions, the rehabilitation of Ms. Chen's spirit as a result of sober reflection during incarceration, and her renewed faith in the system due to her relationship with Counsel Hayden will ensure smooth and orderly compliance with bond conditions.

Previous Circumstance / Defendant possessed a phone that was incompatible with the surveillance software that probation uses to police internet activity.

Changed Circumstance / Defendant has acquired a new model Google Pixel phone for the express purpose of loading the preferred surveillance software.

**IV. Application of §3142(g) Factors**

A. Nature and Circumstances of the Offense §3142(g)(1)

While the Court previously found a violation of bond conditions, the underlying conduct was nonviolent, and there is no allegation that Defendant posed a physical threat to any person. The Court may properly consider that the purpose of detention is regulatory - not punitive. *United States v. Salerno*, 481 U.S. 739, 747 (1987).

B. Weight of the Evidence §3142(g)(2)

Although the Court previously found sufficient basis to revoke bond, the weight of the evidence factor is the "least important" of the §3142 considerations. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). Moreover, while the present motion does draw factual contrasts using the transcript to argue a fuller understanding of Defendant's violation of the bond conditions, Defense Counsel does not wish to relitigate culpability for violation of bond, but instead seeks to focus the Court on whether continued detention is necessary at this stage.

C. Defendant's Characteristics Relevant to Bond Reconsideration §3142(g)(3)

Several significant changes have occurred since the Court's prior ruling:

1. Extended Incarceration in Harsh Circumstances - Defendant has now spent approximately sixty (60) days in custody, including over the 2025 Thanksgiving and Christmas holidays, a great deal of that time spent in cell segregation and subjected to persecutorial discrimination by both inmates and staff, a period and circumstance recognized by courts as significant and potentially punitive in effect;

2. Acceptance of Responsibility - Defendant has acknowledged the recklessness of her actions while on her initial bond, she has legitimately expressed remorse, and demonstrated a renewed commitment to compliance with all court directives;

3. Stabilizing Factors: Defendant now presents a concrete release plan, including enhanced supervision, geographic restrictions, and any additional safeguards deemed necessary by the Court.  Courts have recognized that such developments may materially alter the detention analysis.

<u>D. No Danger to the Community and No Risk of Nonappearance §3142(g)(4)</u>

The Bail Reform Act requires a finding of no condition or combination of conditions sufficient to assure safety and appearance before detention may be ordered. 18 U.S.C. §3142(e). Here, Defendant proposes the following enhanced conditions are sufficient to satisfy the relevant legal standard:

> * Electronic ankle or GPS monitoring, if the Court deems necessary;
>
> * Regular reporting to a senior officer of Pretrial Services and no unapproved travel outside the Northern District of Texas;
>
> * No-contact and restricted-contact provisions, to be monitored on Defendant's devices, including a newly-acquired Google Pixel phone, capable of running the probation office's monitoring software;
>
> * Continued mental health counseling with Phoenix House;
>
> * Any additional condition deemed appropriate by the Court.

Courts have routinely found such conditions sufficient to mitigate risk and Defendant's renewed commitment to following these rules should give the Court reason to reconsider her pretrial bond status under such conditions. See *United States v. O'Brien*, 895 F.2d 810, 816 (1st Cir. 1990).

### IV. Due Process Consideration and the Length of Pretrial Detention

Pretrial detention may not become "excessively prolonged" such that it violates due process. *United States v. Gonzales Claudio*, 806 F.2d 334, 339 (2d Cir. 1986).  Here, continued detention, after meaningful punishment for Defendant's previous violations has already been experienced, risks transforming a regulatory measure into punitive incarceration.  The Supreme Court has cautioned

that such a result offends fundamental principles of due process. See *Salerno*, 481 U.S. at 747–48. Defendant's treatment at the hands of her jailers and inmates is horrific and has more than served its purpose of punishing the Defendant and communicating the Court's intolerance for violation of bond conditions.

## V. Conclusion

For all of the foregoing reasons, Defendant respectfully requests that this Court:

1. Reconsider its prior order revoking bond;

2. Order Defendant's release subject to reasonable and appropriate conditions pursuant to 18 U.S.C. §3142(c); and

3. Grant such other and further relief as justice requires.

Respectfully submitted,

/s/ Steven Hayden

Steven Hayden
SBN 24006245
2351 W NW Hwy #1303
Dallas, Texas 75220
haydenlaw@verizon.net
Telephone: (214) 678-9663
Cell: (469) 569-4779
Facsimile: (214) 631-2375

## CERTIFICATE OF SERVICE AND CONFERENCE

This is to certify that defense Counsel has corresponded with AUSA Vincent Mazzurco or AUSA Jongwoo (Daniel) Chung assigned to this case by email on or about January 9th, 2026, and the Government opposes the above Motion for Reconsideration of Detention Order. A true and correct copy of this Motion has been emailed to AUSA Mazzurco at vincent.mazzurco@usdoj.gov and other relevant email addresses on this January 13th, 2026.

/s/ Steven Hayden
Steven Hayden, Counsel for Defendant